## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 28 2019, 11:06 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Justin R. Wall
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of: <br><br> Ky.H. and Ka.H. (Minor Children), <br><br> and <br><br> C. H. (Father), <br> *Appellant-Respondent,* <br><br> v. <br><br> The Indiana Department of Child Services, <br> *Appellee-Petitioner.* | February 28, 2019 <br><br> Court of Appeals Case No. 18A-JT-2716 <br><br> Appeal from the Huntington Circuit Court <br><br> The Honorable Robert R. McCallen, III, Special Judge <br><br> Trial Court Cause Nos. 35C01-1711-JT-10 & 35C01-1711-JT-11 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Respondent, C.H. (Father), appeals the termination of his parental rights to his minor children, Ky.H. and Ka.H. (collectively, Children).

We affirm.

# ISSUE

Father raises one issue on appeal, which we restate as: Whether the Indiana Department of Child Services (DCS) presented clear and convincing evidence to support the trial court's termination of Father's parental rights.

# FACTS AND PROCEDURAL HISTORY

Father and K.H. (Mother)[1] are the natural parents to Ky.H., born on September 29, 2008, and Ka.H., born on December 27, 2011. On October 30, 2015, DCS received a report alleging that Mother had neglected the Children. The report indicated that the house was in a filthy condition with trash and dirt all over, with no sheets on the beds, and curtains ripped off the walls. It was also claimed that Mother was addicted to methadone, and had recently lost her employment.

---

[1] Mother passed away on August 29, 2016 from taking an overdose of heroin that was supplied to her by Father. Facts pertaining to Mother will be included in so far as these are relevant for the current proceedings.

[5] On November 5, 2015, Family Case Manager Julie Hobbs (FCM Hobbs) unsuccessfully attempted to speak with Mother at her home and by phone. The following day, FCM Hobbs returned to the residence where she spoke with Mother. The home was clean, but the carpets were heavily stained and soiled. Mother denied using illegal substances and volunteered to submit to a drug test.

[6] Mother's drug test indicated a positive result for Adderall in excess of the maximum therapeutic level for that medicine. FCM Hobbs returned to Mother's residence on November 18, 2015, but Mother was not home, nor did she answer her phone. On November 23, 2015, FCM Hobbs again visited Mother's house. This time, Mother answered the door. The home was dirty and cluttered. FCM Hobbs discussed with Mother the condition of the home and Ky.H.'s issues of playing with her feces. Mother submitted to another drug test, and tested positive for cocaine.

[7] On November 25, 2015, DCS obtained an order to remove the Children from Mother's care. However, before DCS could detain the Children, Mother fled with the Children to Florida. Eventually, Mother and the Children were located in Florida and returned to Indiana. On December 4, 2015, the Children were formally removed from Parents' care and placed with Maternal Grandparents. On December 8, 2015, DCS filed a Child in Need of Services (CHINS) petition for each Child. With respect to Father, the petitions alleged that Father first tested positive for cocaine on December 7, 2015 and had since also tested positive for marijuana. On February 12, 2016, the trial court issued an order, adjudicating both Children as CHINS and finding:

Father had random contact with the [Children] prior to DCS's involvement in this matter. Father tested positive for illegal drugs on three different occasions and had not visited with his [C]hildren as a result of his drug use since this matter has opened. Father failed to appear for today's proceeding and has had no contact with DCS since December 2015.

(Appellant's App. Vol. II, p. 92).

[8] On March 17, 2016, after a dispositional hearing, the trial court entered a dispositional decree ordering Father to participate in services, including, in part, a substance abuse evaluation, random drug screens, supervised visitation with the Children, and a parenting assessment. Father was also ordered to follow all recommendations resulting from his evaluation and assessment. After the disposition was entered, Father completed a substance abuse evaluation. Of the 32 recommended individual therapy sessions, Father completed 17. Father attended supervised visitation with his Children from around September 2016 through March 2017 and has not visited the Children since. Other than taking "one or two" drug screens in June 2017, Father stopped participating in services in March 2017 because he had a warrant out for his arrest and "did not want to be arrested in front of [his] [C]hildren." (Transcript pp. 39, 43).

[9] On March 29, 2017, the State filed an Information, charging Father with two Counts of Level 5 felonies dealing in a narcotic drug and one Count of Level 6 felony possession of a narcotic drug. Father "stayed low for a while until [he] got [his] bond money together to bond immediately out." (Tr. p. 43). On May 15, 2017, he turned himself in and bonded out the same day. He remained out

on bond until he was sentenced on January 16, 2018. During the sentencing hearing, he pleaded guilty to one Count of dealing in a narcotic drug and to one Count of possession of a narcotic drug. He was sentenced to eight years in the Indiana Department of Correction with no time suspended.

[10] Ky.H. has been receiving individual therapy from Pamela Rumsey (Rumsey) at the Bowen Center since September 2015. During these therapy sessions, Ky.H. is learning to communicate her emotions appropriately. Although Ky.H. has made progress since starting therapy, Rumsey advised that Ky.H. needs "continued stability and consistency" and a stable environment to continue to make progress. (Tr. pp. 27-28). The Children also receive in-school and homebased services from Patricia Meriwether (Meriwether) at the Bowen Center. Ky.H. needed help to stay focused on tasks and to follow directions. She is also enrolled in a peer and skills group to work on social skills and emotion regulation. Ka.H. receives help in identifying and managing her emotions. While both Children have mentioned Father, Meriwether clarified that there is "[n]ot a whole lot of emotion involved." (Tr. p. 35). When Ky.H. mentions Father, it is "generally not wanting to talk about him, [and] [s]he has mentioned not wanting to see him when she thought she was going to have to see him." (Tr. p. 35).

[11] On November 3, 2017, DCS filed its verified petitions for involuntary termination of the parent-child relationship. Father remained incarcerated at the time of the termination hearing on June 8, 2017, with an earliest possible release date of July 16, 2023. Father testified that since being incarcerated he

has participated in the Recovery While Incarcerated Program. The program is a nine-month intensive rehabilitation program that consists of daily AA/NA meetings, program facilitation classes, and random drug screens. Completion of the program results in a six-month time cut and might come with a sentence modification, if approved by the court.

[12] On June 8, 2018, the trial court terminated Father's parental rights to his Children, finding, in pertinent part, that:

> [Father] himself testified that the [C]hildren are in a good place and well cared for. When asked why his parental rights should not be terminated, he testified that he wants to remain a part of their lives. While that may be what he wants, he did not indicate it is in the [C]hildren's best interests or that it had anything to do with what the [C]hildren want. The evidence overwhelmingly supports that what [Father] wants is not in the [Children's] best interests.
>
> The evidence is clear and convincing that continuation of the parent-child relationship with [Father] is not in the [C]hildren's best interests. The [Children] need and deserve permanency, not just a placement subject to change.
>
> DCS's plan for the [C]hildren is adoption by their current placement, their [M]aternal [G]randparents.

(Appellant's App. Vol. II, p. 52).

[13] Father now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

## I. *Standard of Review*

Father challenges the termination of his parental rights to the Children. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). However, parental rights "are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights." *Id.* If "parents are unable or unwilling to meet their parental responsibilities," termination of parental rights is appropriate. *Id.* We recognize that the termination of a parent-child relationship is "an 'extreme measure' and should only be utilized as a 'last resort when all other reasonable efforts to protect the integrity of the natural relationship between parent and child have failed.'" *K.E. v. Ind. Dep't of Child Servs.*, 39 N.E.3d 641, 646 (Ind. 2015).

Indiana courts rely on a "deferential standard of review in cases concerning the termination of parental rights" due to the trial court's "unique position to assess the evidence." *In re A.K.*, 924 N.E.2d 212, 219 (Ind. Ct. App. 2010), *trans. dismissed*. Our court neither reweighs evidence nor assesses the credibility of witnesses. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We consider only the evidence and any reasonable inferences that

support the trial court's judgment, and we accord deference to the trial court's "opportunity to judge the credibility of the witnesses firsthand." *Id.*

## II. *Termination of Parental Rights Statute*

In order to terminate a parent's rights to his child, DCS must prove:

> (A) that one (1) of the following is true:
>
> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
> * * * *
> (iii) The child has been removed from the parent and has been under the supervision of a local office . . . for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a [CHINS] . . . ;
>
> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a [CHINS];
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove each of the foregoing elements by clear and convincing evidence. *C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92 (Ind. Ct. App. 2014). "[C]lear and convincing evidence requires the existence of a fact to 'be highly probable.'" *Id.* On appeal, Father does not challenge the trial court's finding that the Children have been removed from the home for the requisite period of time.

### A. *Conditions have not been remedied*[2]

[17] Father claims that there is insufficient evidence to support the trial court's determination that the conditions which resulted in the removal of the Children have not been remedied. It is well established that "[a] trial court must judge a parent's fitness as of the time of the termination hearing and take into consideration evidence of changed conditions." *Stone v. Daviess Cnty. Div. of Children & Family Servs.*, 656 N.E.2d 824, 828 (Ind. Ct. App. 1995), *trans. denied*. In judging fitness, a trial court may properly consider, among other things, a parent's substance abuse and lack of adequate housing and employment. *McBride v. Monroe Co. OFC*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). The trial court may also consider a parent's failure to respond to services. *Lang v. Starke Co. OFC*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*. "[H]abitual patterns of conduct must be evaluated to determine whether there is a

---

[2] Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive; therefore, DCS is required to prove only one of three listed elements. *See In re A.K.*, 924 N.E.2d at 220-21. In this case, the trial court based its termination decision on DCS's satisfaction of Indiana Code section 31-35-2-4(b)(2)(B)(i) & (ii)—that the conditions that resulted in the Children's removal have not been remedied and the continuation of the parent-child relationship poses a threat to the Children's well-being.

substantial probability of future neglect or deprivation." *Stone*, 656 N.E.2d at 828. A trial court "need not wait until the children are irreversibly influenced by their deficient lifestyle such that their physical, mental and social growth is permanently impaired before terminating the parent-child relationship." *Id.* Furthermore, "[c]lear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's very survival. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *K.T.K.*, 989 N.E.2d at 1230.

[18] In support of his argument that the conditions which resulted in the removal of the Children have been remedied, Father contends that his argument is "fairly straight-forward." (Appellant's Br. p. 21). Specifically, he argues that due to his release date of July 16, 2013, and the "fact that the Children were thriving in relative care and being well-taken care of," he insists that "he should [be] given time to implement services with DCS upon release from incarceration[.]" (Appellant's Br. p. 21).

[19] Upon review of the evidence, we find that DCS clearly established that Father did not remedy the conditions which resulted in the removal of the Children in the first place. From September 2016, through May 15, 2017, prior to Father turning himself in on drug-related charges, Father put forth a minimal amount of participation with the court-ordered services. Of the 32 scheduled individual therapy sessions, he only completed 17. Even though he initially attended supervised visits with the Children, he stopped participating in March 2017 and

has not seen the Children since then. Trying to blame DCS for his failure to complete his services, Father contends that the was discouraged from participating by a DCS family case manager after he bonded out on May 15, 2017. Making short shrift of this argument, the trial court noted—albeit in a footnote—that "[w]hile the [c]ourt finds that hard to believe because of the family case manager involved, even if true, [the Children] are his children and he was responsible to take any and all steps to pursue reunification. Other than submit to a drug test, he did nothing." (Appellant's App. Vol. II, p. 51).

[20] Furthermore, at the time the Children were removed from his care and adjudicated as CHINS, Father had tested positive for illegal drugs on three different occasions. In August 2016, Father supplied Mother with the heroin that she overdosed on, and in March 2017, Father was charged with three drug-related Counts. Overall, illegal substances have continued to be an issue for Father, and ultimately led to his incarceration.

[21] Unlike Father, we do not consider his situation similar to *K.E. v. Ind. Dep't of Child Servs.*, 39 N.E.3d 641, 648 (Ind. 2015), in which our supreme court reversed the termination of an incarcerated father's parental rights given father's "substantial efforts towards bettering his life" by participating in twelve programs during his incarceration, most of which were voluntary and did not result in a sentence reduction. In addition, while father was incarcerated at the time of removal and throughout the entire CHINS case, he nevertheless participated in visitation with his children every other week and made nightly phone calls to his children. *Id.* 649. Here, however, Father had nine months

prior to his incarceration to participate in services and visit with the Children. Other than a minimal effort, Father failed to complete any significant services and he has not seen the Children since March 2017. Although Father participated in the Recovery While Incarcerated Program during his incarceration, the trial court found that Father's "reasons for doing so do not appear to be motivated by a desire to be reunited with his [Children], but instead to gain his release from prison as soon as possible." (Appellant's App. Vol. II, p. 52).

[22] Accordingly, as the record reflects substantive evidence documenting Father's pattern of inability, unwillingness, and lack of commitment to cooperate with services and to address his substance abuse problem, the trial court's conclusion that there is a reasonable probability that the conditions that resulted in the Children's removal from Father's care have not been remedied was not clearly erroneous.[3]

### B. *Best Interests of the Children*

[23] Father also challenges the trial court's determination that termination of his parental rights is in the best interests of the Children. The parent-child relationship is "one of the most valued relationships in our culture." *Bester*, 839

---

[3] Because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive and we affirmed the trial court's conclusion that the conditions that resulted in the Children's removal have not been remedied, we will not address whether the continuation of the parent-child relationship poses a threat to the Children's well-being.

N.E.2d at 147 (quoting *Neal v. DeKalb Cnty. Div of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)). Thus, the purpose of terminating a parent-child relationship is to protect the child, not to punish the parent. *In re C.C.*, 788 N.E.2d 847, 855 (Ind. Ct. App. 2003), *trans. denied*. When considering whether termination would be in a child's best interests, the trial court must "look beyond the factors identified by [DCS] and . . . look to the totality of the evidence." *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*. "The trial court need not wait until the child is irreversibly harmed such that the child's physical, mental and social development is permanently impaired before terminating the parent-child relationship." *K.T.K.*, 989 N.E.2d at 1235. Permanency is a central consideration in determining a child's best interests. *Id.* "[T]he right of parents to raise their children should not be terminated solely because there is a better home available for the children." *In re K.S.*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001).

[24] By the time of the termination hearing, the Children had been removed from Father's care for over two and a half years. They have been in their Maternal Grandparents' care since the removal and are thriving. Ky.H. is receiving therapy sessions to aid in her emotional health and both Children are receiving in-school and homebased services. Ky.H.'s therapist advised that Ky.H. is best served with "continued stability and consistency" and a stable environment to continue to make progress. (Tr. pp. 27-28).

Father alleges that he will be able to provide stability and housing for the Children upon his release; however, at the time of the termination hearing his release was still five years away. He had not yet completed any services or courses which would allow him a possible sentence modification or time cut. Moreover, at no point during the CHINS proceeding did Father demonstrate that he could provide the Children with a stable environment, nor did he demonstrate a continued abstinence from illegal substances. It is well established that "[a] parent's historical inability to provide a suitable environment, along with the parent's current inability to do the same, supports a finding that termination of parental rights is in the best interests of the children." *In re J.C.*, 994 N.E.2d 278, 290 (Ind. Ct. App. 2013).

Accordingly, based on the totality of the evidence, we find that there is ample support for the trial court's determination that termination of Father's parental rights is in the Children's best interests.

## C. *Satisfactory Plan*

As a final contention, Father challenges DCS's plan for the future care and treatment of the Children. In order for the trial court to terminate the parent-child relationship, the court must find that there is a satisfactory plan for the care and treatment of the children. *In re S.L.H.S.*, 885 N.E.2d 603, 618 (Ind. Ct. App. 2008). This plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. *Id.* Here, DCS's plan was for the Children to be

adopted by Maternal Grandparents. Therefore, the evidence supports the trial court's finding that DCS had a satisfactory plan for the care and treatment of the Children. *See In re D.D.*, 804 N.E.2d 258, 268 (Ind. Ct. App. 2004) (concluding that the State's plan for child to be adopted by current foster parents or another family constitutes a suitable plan for child's future care), *trans. denied.*

## CONCLUSION

[28] Based on the foregoing, we conclude that DCS presented clear and convincing evidence to support the trial court's order terminating Father's parental rights to the Children.

[29] Affirmed.

[30] Kirsch, J. and Robb, J. concur